# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| DOUGLAS C. BRYANT, ) | |
| ) | Case Nos. 1:10-cr-53; 1:14-cv-183 |
| *Petitioner*, ) | |
| ) | Judge Travis R. McDonough |
| v. ) | |
| ) | Magistrate Judge Christopher H. Steger |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Respondent*. ) | |

## MEMORANDUM OPINION

Before the Court is Petitioner's supplemented pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Docs. 40, 49.)[1] He bases the request for relief at least in part on *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), was unconstitutionally vague. (*Id.*) The United States responded in opposition to the original petition on August 4, 2014 (Doc. 42), and the supplemented petition on August 19, 2016 (Doc. 51). Petitioner replied to both responses in turn. (Docs. 43, 52.) For the reasons that follow, Petitioner's supplemented pro se § 2255 motion will be **DENIED** and **DISMISSED WITH PREJUDICE.**

## I. BACKGROUND

Beginning in December of 2009, law enforcement officers began a series of controlled drug buys from Freddy Marin, culminating with an informant's purchase of six pounds of marijuana from Marin on February 11, 2010. (Presentence Investigation Report (PSR) ¶¶ 5-6.)

---

[1] Unless otherwise specified, all citations to the record refer to E.D. Tenn. Case No. 1:10-cr-53.

Officers converged on the scene to arrest Marin, and, as they did so, Petitioner got out of the front passenger seat of Marin's vehicle and tried to flee. (*Id.* ¶ 6.) They apprehended Petitioner and found 26.6 grams of cocaine and $600 cash in his possession. (*Id.*) Because Petitioner was on supervised release for prior federal convictions, and because this incident of drug possession was one in a series of repeated violations of the terms of his supervised release, the probation officer moved to revoke his supervised release. (E.D. Tenn. Case No. 1:01-cr-48.)

A federal grand jury charged Petitioner with possessing with intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). (Doc. 1.) The United States filed notice, pursuant to 21 U.S.C. § 851, of its intent to enhance Petitioner's sentence based on his prior federal drug conviction—the same one for which he was on supervised release. (Doc. 20.) On July 14, 2010, Petitioner pled guilty as charged, pursuant to a plea agreement with the United States. (Docs. 21, 23, 24, 25.) As part of that agreement, Petitioner stated that he would not contest the revocation of his supervised release. (E.D. Tenn. Case No. 1:01-cr-48, Doc. 59.)

In calculating the applicable Guidelines range for Petitioner's new offense, the probation officer noted that a drug quantity of 26.6 grams of cocaine would ordinarily yield a base offense level of 14. (PSR at ¶ 12.) Based on two prior felony convictions—a 1996 robbery conviction and 2011 drug conviction—the probation officer deemed Petitioner to be a career offender as defined in Section 4B1.1 of the United States Sentencing Guidelines, with an enhanced offense level of 34. (*Id.* at ¶¶ 20, 30, 33.) After a three-level reduction for acceptance of responsibility, Petitioner's total offense level was 31. (*Id.* at ¶¶ 21-22.) Petitioner had ten criminal history points, for a criminal history category of V, which increased to VI because of his career-offender classification. (*Id.* at ¶ 38.) The resulting Guidelines range was 188 to 235 months' imprisonment. (*Id.* at ¶¶ 64.)

Petitioner objected to his classification as a career offender, arguing that the 1996 robbery conviction was too remote to be considered a predicate offense, and the Court had the "ability and duty to depart" from the career-offender Guidelines range, because, in his view, a sentence within that range would be excessive and unjustified. (Doc. 29, at 1, 3.) During the sentencing hearing, Petitioner renewed his objection, reiterating that the Court had discretion to impose whatever sentence it deemed appropriate. (Doc. 34, at 3–4.) The United States agreed that the Guidelines range was advisory, but emphasized that the PSR correctly classified Petitioner as a career offender and calculated his Guidelines range accordingly. (*Id.* at 5–6.)

The Court noted that, even if Petitioner was technically a career offender as defined by the Guidelines, he could be sentenced outside that Guidelines range if, in the Court's view, he was "really not the type of person that Congress [or the Sentencing Commission] had in mind." (*Id.* at 7–8.) The Court went on to discuss Petitioner's criminal history:

> [A]t age 18 he had a conviction for burglary of an automobile, at age 19 he had a conviction for marijuana possession and exchange; at age 21, a conviction for, looks like, possession of cocaine; at age 24, attempted forgery; at age 22, carrying a dangerous weapon; at age 23, robbery; at age 26, unlawful possession of a weapon; at age 27, resisting arrest; at age 28, possession with intent to distribute crack cocaine and possession of a weapon in furtherance of a drug-trafficking offense and felon in possession of a firearm. For [that] conviction he received a sentence of 100 months' imprisonment . . . in federal court.

(*Id.* at 9.) The Court found that Petitioner's criminal activity had been "consistent and constant," and "about the time that is significant in his life since he's turned 18 where he's not been either arrested or convicted of a crime has been when he's been in jail." (*Id.* at 10.) The Court then concluded that Petitioner had two qualifying predicate convictions and was "exactly the type of person that Congress . . . and the Sentencing Commission had in mind for career-offender status," such that sentencing him within the career-offender Guidelines range would not result in

3

a "disparate . . . or excessive sentence." (*Id.* at 10–11.) The Court concluded that the PSR correctly calculated the advisory Guidelines range. (*Id.* at 11.)

Petitioner, through counsel, argued that he had experienced difficulty "readjusting to the community" on supervised release, in part because of his drug addiction, and he asked the Court to impose "the minimum sentence" possible. (*Id.* at 14–16.) The Court asked defense counsel to address "what appears to be a predilection on [Petitioner's] part to assault and beat women,"[2] and counsel stated that, although Petitioner had twice been charged with domestic assault, the incidents did not reveal any "tremendous amount of rage or violence," but merely a lack of appropriate "social skills." (*Id.* at 16–17.) When invited to personally address the Court, Petitioner apologized to his girlfriend and his family, said he was not the same person he had been, and asked the Court "to have mercy." (*Id.* at 18–20.) Although arguing that Petitioner's criminal record required a lengthy sentence, the United States acknowledged that Petitioner had twice met with law enforcement agents in an attempt to cooperate. (*Id.* at 20–21.)

Petitioner affirmed the fact of his prior federal conviction, as referenced in the § 851 notice. (*Id.* at 22.) The Court credited Petitioner's allocution, noting that it demonstrated his intelligence and that his willingness to apologize revealed "something good." (*Id.* at 23.) But the Court also referenced Petitioner's "long and lengthy and serious criminal history," which showed that he was a "persistent criminal" who was apparently unable or unwilling to "conform [his] conduct to what the law requires." (*Id.* at 23–24.) The Court continued:

---

[2] Law enforcement arrested Petitioner for domestic violence on February 1, 2009, after fighting with his girlfriend at a Knoxville nightclub (E.D. Tenn. Case No. 1:01-cr-48, Doc. 51, at 5.) Approximately one year later, on February 23, 2010, they arrested him for domestic violence again—he repeatedly hit his girlfriend in the face, destroyed personal property, and threatened to kill her. Petitioner pled guilty to that offense on March 4, 2010. (*Id.* at 2–4.)

>[T]he Court has someone who has been involved in crimes for a long time, on a persistent basis, and then more recently he's been involved in violent acts against someone who is very, very close to him. And I think this says the same thing, that this is someone who is unable to control his acts or is unwilling to do so. You were beating someone who does not have the same physical strength that you do. According to the report, it started with something insignificant: You were asleep. Your cell phone was ringing. The woman wanted to give you the phone so it would not keep ringing. And you became upset because you thought perhaps she was looking on your phone to see who was calling. So instead of talking about it or going into the shower and taking a cold shower or going for a walk around the block, you start beating her. That is not a rational reaction to something like that. And, unfortunately, if you have any type of relationship you're going to have things like that happen all the time – the food is not going to be warm, the car will not have gas in it, the kids won't be ready. There are all kinds of things that are going to happen, if there's a relationship, and you're going to get angry about it. But the result cannot be beating somebody.
>
>There is also a record in your history of having guns around. Someone who is unwilling to control their conduct and cannot control their conduct when they get angry and are prone to violence like this and there are guns around, that's a very, very dangerous concern. So the Court's consideration of what is necessary to protect the public from you requires the Court to impose a sentence at the top of the guidelines here. The Court concludes that only such a sentence will serve to protect the public from future crimes that you may commit.

(*Id.* at 24–25.) After explicitly considering the § 3553(a) factors, including Petitioner's background, history, the circumstances of the offense, and "the absolute necessity to protect the public from future crimes," the Court imposed a sentence of 235 months' imprisonment. (*Id.* at 26.)

As for the charged violation of supervised release, Petitioner admitted that he had, in fact, violated the terms and conditions of his release. (*Id.* at 12–13.) The Court noted that Petitioner faced a maximum term of 60 months' imprisonment for that violation, but, because of his cooperation with law enforcement authorities, the Court would give him "a break." (*Id.* at 25.) The Court ultimately imposed a within-Guidelines term of 51 months' imprisonment for the supervised release violation, explaining that it had imposed a sentence less than the maximum

5

"to give [Petitioner] the benefit of his assistance to the government and also because he did apologize to what the Court thinks is the victim of his latest domestic abuse situation." (*Id.* at 28.) Consistent with Section 7B1.3(f) of the United States Sentencing Guidelines, the Court ordered that Petitioner's revocation sentence run consecutive to the sentence for his new offense. (*Id.*)

Petitioner appealed, and on February 21, 2012, the Sixth Circuit affirmed his conviction and sentence. (E.D. Tenn. Case No. 1:01-cr-48, Doc. 63]. The Supreme Court denied Petitioner's request for a writ of certiorari on June 18, 2012. (E.D. Tenn. Case No. 1:01-cr-48, Doc. 66]. One and one-half years later—in February of 2014—Petitioner filed a motion for an extension of time in which to file a § 2255 motion. (Doc. 36.) This Court denied that request, noting that the period in which to file a timely § 2255 motion had likely already expired, but that the timeliness of any future § 2255 motion would be assessed after its filing. (Doc. 37.) On June 12, 2014, Petitioner filed the instant petition for collateral relief. (Doc. 40.) Two years later—in June of 2016, he supplemented that filing with another ground for relief. (Doc. 49.)

The supplemented § 2255 petition contains five grounds for collateral relief. First, Petitioner argues that counsel was constitutionally deficient because he failed to inform Petitioner about the maximum possible term of imprisonment prior to his entry of the guilty plea. (Doc. 40, at 11–14.) Second, he suggests that this Court erred when it relied on prior state convictions to enhance his sentence under Section 4B1.1, an action he claims that the Supreme Court prohibited in *Alleyne v. United States*, 133 S. Ct. 2151 (2013). (*Id.* at 14–24.) Third, he claims the Supreme Court's decision in *Descamps v. United States*, 133 S. Ct. 2276 (2013), removed an unspecified number of his prior convictions from Section 4B1.2(a)'s definition of "crime of violence" and, as a result, that he no longer qualifies for career offender enhancement.

6

(*Id.* at 24–26 (noting *Descamps* outlined the modified categorical approach used to determine whether conviction under a divisible penal statute constitutes a predicate offense under Section 4B1.2(a)'s enumerated-offense, use-of-physical-force, and residual clauses).) Fourth, he argues without elaboration that counsel was constitutionally deficient because he failed to investigate "certain pretrial functions," including by not limited to a psychiatric evaluation and Petitioner's "childhood drug history." (*Id.* at 26–29.) Finally, Petitioner argues that the *Johnson* decision—like the *Descamps* decision—removed an unspecified number of his prior convictions from Section 4B1.2(a)'s definition of "crime of violence" and, as a result, that he no longer qualifies as a career offender. (Doc. 49.)

## II. TIMELINESS OF SUPPLEMENTED PETITION

Section 2255(f) places a one-year statute of limitations on all petitions for collateral relief under § 2255 running from either: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f). This same provision governs the timeliness of later-filed amendments. *Cameron v. United States*, No. 1:05-cv-264, 2012 WL 1150490, at *3–6 (E.D. Tenn. April 5, 2012) (citing *Olsen v. United States*, 27 F. App'x 566 (6th Cir. Dec. 14, 2001)). Petitioner has failed to demonstrate that subsections (f)(2) or (f)(4) apply to his case, i.e., he has not established that any illegal action by the government prevented him from

7

making the timely petition or the existence of facts affecting his case that could not have previously been discovered through the exercise of due diligence. As such, timeliness of Petitioner's supplemented § 2255 motion depends on whether or not its submission complied with subsections (f)(1) and (f)(3).

### A. Subsections (f)(1) and (f)(3)

For purposes of the subsection (f)(1)—where the statutory period expires one year from the date on which the judgment of conviction becomes final—a "conviction becomes final at the conclusion of direct review." *Brown v. United States*, 20 F. App'x 373, 374 (6th Cir. 2001) (quoting *Johnson v. United States*, 246 F.3d 655, 657 (6th Cir. 2001)). Where a defendant pursues direct review through to a petition for certiorari in the United States Supreme Court, direct review concludes when the Supreme Court either denies the petition for certiorari or decides the case. *Clay v. United States*, 537 U.S. 522, 532 (2003). The Supreme Court denied Petitioner's request for a writ of certiorari on June 18, 2012, and statute of limitations began to run on that date. The window for requesting relief under subsection (f)(1) expired on June 18, 2013, nearly one year before Petitioner filed the original pro se petition in June of 2014 (Doc. 40), and more than three years before he submitted his pro se supplement to that same petition in June of 2016 (Doc. 49).

To the extent Petitioner attempts to rely on subsection (f)(3)'s independent one-year filing period for newly recognized rights made retroactively applicable on collateral review as justification for submitting the petition after June 28, 2013, only the claim for collateral relief based on the *Johnson* decision even arguably satisfies the conditions required to trigger that provision. *See* 28 U.S.C. § 2255(f)(3) (requiring reliance on a newly recognized and retroactively applicable right); *see also Welch v. United States*, 136 S. Ct. 1257, 1265 (2016)

8

("*Johnson* is . . . a substantive decision and so has retroactive effect . . . in cases on collateral review."); *In re Windy Watkins*, 810 F.3d 375, 380–81 (6th Cir. 2015) (finding *Johnson* constitutes a new substantive rule of constitutional law made retroactively applicable on collateral review and thus triggers § 2255(h)(2)'s requirement for certification of a second or successive petition). By contrast, Petitioner's other theories of collateral relief do not assert a newly recognized right and thus cannot rely on the one-year filing window under subsection (f)(3).[3] As a result, timeliness of those claims depend on whether or not Petitioner has established a basis for equitably tolling subsection (f)(1).

B. **Equitable Tolling of Subsection (f)(1)**

Section 2255(f)'s statute of limitations is not jurisdictional and, as a result, the filing window is subject to equitable tolling under limited and extraordinary circumstances. *Dunlap v. United States*, 250 F.3d 101, 1007 (6lth Cir. 2001). Used sparingly, a petitioner bears the burden of establishing that equitable tolling applies to her case, *see Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003); *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004), and must show "(1) that [s]he

---

[3] The *Descamps* decision involved application of the categorical approach first adopted by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), to a new set of facts. *See Descamps*, 133 S. Ct. at 2283 ("Our case law explaining the categorical approach and its 'modified' counterpart all but resolved this case."); *id* at 2285 ("Applied in that way—which is the only way we have ever allowed—the modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute."). As such, the holding of that case cannot be characterized as articulating a "rights-creating rule," i.e., a newly recognized right within the scope of § 2255(f)(3). *See, e.g.*, *United States v. Montes*, 570 F. App'x 830, 831 (10th Cir. 2014) (finding that "the *Descamps* decision did not recognize a new right" and concluding that the petitioner's § 2255 motion—which was filed within one year of *Descamps*, but over one year after the petitioner's conviction became final—was untimely").

It is similarly well established that the *Alleyne* decision—which the Supreme Court decided around two years after Petitioner received his sentence, does not apply retroactively on collateral review. *See In Re Mazzio*, 756 F.3d 487, 488 (6th Cir. 2014) ("[A]ny new rule announced in *Alleyne* has not been made retroactive to cases on collateral review by the Supreme Court.").

9

has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing," *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010); *Hail v. Warden*, 662 F.3d 745, 750 (6th Cir. 2011); *see also Jurado*, 337 F.3d at 643 ("Absent compelling equitable considerations, a court should not extend limitations by even a single day.").

Review of the petition, supplement, replies, and CM/ECF record fail to reveal a single extraordinary justification for Petitioner's failure submit the claims contained in his original pro se petition within the one-year window permitted by subsection (f)(1). *Compare Stovall v. United States*, No. 1:12-cv-377, 2013 WL 392467, at *3 (E.D. Tenn. Jan. 31, 2013) (rejecting request for equitable tolling of subsection (f)(1) in absence of evidence illustrating a diligent pursuit of the rights asserted), *with Jones v. United States*, 689 F.3d 621, 627 (6th Cir. 2012) (granting request for equitable tolling where the petitioner pled facts indicating he had been separated from his legal materials for an extended period of time due to multiple detention transfers and an illness). Because those theories are all untimely, the Court will deny them without review.

## III. STANDARD OF REVIEW

To obtain relief under 28 U.S.C. § 2255, Petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). She "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete

miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

## IV. REMAINING GROUND FOR *JOHNSON*-BASED RELIEF

Only one ground for collateral relief remains: Petitioner's argument that the *Johnson* decision removed an unspecified number of his prior convictions from Section 4B1.2(a)'s definition of "crime of violence" and, as a result, that he no longer qualifies as a career offender.[4]

On March 6, 2017, the Supreme Court held that the United States Sentencing Guidelines are "not amenable to vagueness challenges." *Beckles v. United States*, 137 S. Ct. 886, 894 (2017). As a result, binding authority now dictates that the *Johnson* decision does not provide a basis for vacating, setting aside, or correcting Petitioner's career offender designation under Section 4B1.1.

---

[4] The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). It was this third clause—the residual clause—that the Supreme Court deemed unconstitutional in the *Johnson* decision. 135 S. Ct. at 2563.

Section 4B1.1 enhances a defendant's offense level if he or she qualifies as a "career offender," i.e., adult defendant whose offense of conviction is a "crime of violence or controlled substance offense" and who has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S. Sentencing Manual § 4B1.1(a). "Crime of violence" under the Guidelines is defined in an almost identical manner as "violent felony" under the ACCA. *See* U.S. Sentencing Manual § 4B1.2(a) (adopting identical use-of-force and residual clauses as well as a nearly identical enumerated-offense clause).

11

## V. CONCLUSION

For the reasons discussed above, Petitioner's supplemented pro se § 2255 motion (Docs. 40, 49) will be **DENIED** and **DISMISSED WITH PREJUDICE**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Fed. R. App. P. 24. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

**AN APPROPRIATE ORDER WILL ENTER.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**